May it please the Court, I am Lara Krieger for Petitioner of Freightman Carrillo-Torres. This petition raises two issues. The first is that the government never ruled on Mr. Carrillo's September 1980 naturalization application. And the second issue is that the December 1998 removal order, which underlies the current proceedings, was so fundamentally unfair that it didn't terminate Mr. Carrillo's LPR status, and the BIA erred in ruling to the contrary. I would like to reserve one minute in rebuttal. Okay, just stop short of using all the time. And we ask the Court to grant the petition so that Mr. Carrillo can finally receive a title. Does the Court have any questions or should I proceed? No, please proceed. As stated in our briefs, the first issue has to do with Mr. Carrillo's status as an LPR, as an honorably discharged member of the U.S. Air Force, which all culminated in his September 1980 naturalization application. The application was properly filed, and the government Are you claiming that he is a citizen? No. We're claiming that he has a good faith claim to citizenship and that the facts raise a disputed issue of material fact, in that he filed the 1980 application based upon, again, his LPR status and his honorable discharge from the military, and the government has never ruled on it. They had an opportunity, both in these papers and in the IJ proceedings, to come forth with information about whatever happened to that application, and they never did. In this proceeding, it was, did the Court, didn't even rule on that claim? Is that what you're saying? Correct. What happened was Petitioner brought up his claim to a naturalization. He didn't have at hand the 1980 application, but he attempted to file an additional application, and the IJ presumably decided that he would not transfer the matter and did not hold the jurisdiction to adjudicate a naturalization application, which is true. We can move on here. This Court can rule on it under 1252B. However, we request a transfer to the District Court because we concede that the case is not so cut and dry, that there does need to be more factual fact-finding. And what's the factual issue that you think is open? We contend that the factual issue is that there is this outstanding application, that he is entitled to a ruling on it, and that the government has never come forth. And what's the matter with this, is it the 1998 order excluding him, I guess that was an order of excluding him? Right. It was an order of inadmissibility based on 212A. As I've said, Petitioner had been an LPR since 1963. He had never given up that LPR status. When he went to Mexico briefly, he came back into the country or attempted to reenter. He had his reentry papers. In the record, it shows that he had an I-94 stamped with the I-551. The government in Notice to Appear said that he was an LPR, but yet charged him not under 237, which would be the applicable deportation provisions, but instead under 212 for inadmissibility. An LPR is entitled to the various burdens of proof and all of that under 237, not 212. So if that 1998 order is invalid, let's say, then he should not be found to have reentered this time after having been validly deported. Correct. Is that right? That these proceedings stem wholly from the 1990, we claim, invalid order of removal. And it is true that there were reinstatements of that order, but they all stem from that one tainted proceeding. What about the 2002 order that ordered him removed? There's been little talk of that. I'm not sure which one. He's come back all the time. He goes back and forth. Right. Well, the December 2002 order is the order giving rise to these proceedings. The December 16, 2002 order is the Notice to Appear that directly gave rise to the current proceedings. You mentioned there was no 2002 order deporting him. Didn't they deport him when he came back? Well, there were orders in August of 1999. There were two reinstatement orders, and one of those did lead to a conviction for illegal reentry. And then he was ordered deported in 2002, wasn't he? Yes. Right. Well, he's come back again after having been ordered deported in 2002. If the 2002 order of deportation is a valid order, then he would have – well, this case would be over. I mean, he'd lose, wouldn't he? Well, again, our contention is that all of the deportation orders have been based upon that December 1998 order. They all refer back to the 1998 order saying, you're not an LPR, you're an inadmissible alien. But that 1998 order was never proper. It wasn't adjudicated under the correct standard. How can it be collaterally – or what precedent says it can be collaterally attacked in this proceeding? Well, there isn't much precedent on that. There is precedent saying to the extent that the underlying deportation or removal order is fundamentally unfair, or I believe the exact language is a gross miscarriage of justice, a later panel of this court can collaterally review a previous order. I couldn't find any cases that actually granted the collateral review, but there is authority that the panel is permitted to do that. If there's a gross miscarriage of justice. Correct. What's bothering me about Petitioner's case is it seems like there's some technical arguments about the 1998 deportation, but I'm not understanding why it would be a gross miscarriage of justice. I'm not quite seeing that. I think that the point is to me, Your Honor, is that the INS and now the DHS has certain regulations that they need to follow. Here, they didn't follow anything. They recognized that he was an LPR, chose to disregard that, instead charged him and convicted him or sent him back based upon a conviction for petty theft, which I don't know if Your Honor saw that it was for the theft of meat because he was hungry. And he spent one day in jail and deported him based upon that. There may be certain other things that. What was the basis of the deportation that served as the predicate to the felony conviction for reentry following deportation? Again, Your Honor, based upon my review of the record, it appears that they all point back to that underlying first removal order in December 1998, point to that saying you reentered after a previous order of removal. But here, that whole background became the foundation for a felony conviction, which he did appeal, I take it. Or if he did appeal, it stayed in place. So there's been a finding now that that deportation was valid enough to be the basis of a felony conviction. Doesn't that really kind of stand as a bar to these later attacks? I didn't find any case law that would say that our case was precluded. Just one note. He was convicted. It did come up to the Ninth Circuit and they vacated and remanded the sentence. And he was released after time served. But it didn't know. The conviction stood. Yes. Your time's just about up. But we threw you out with questioning. So we'll add a minute to your time for rebuttal. OK. Thank you. May it please the court. My name is Jennifer Paisner on behalf of the respondent Alberto Gonzalez. This case arises in the context of a new notice to appear, which was issued in December of 2002. After the petitioner in this case, Mr. Carrillo, for either the fourth or the fifth time, again illegally reentered the United States. There were two charges of removability in the new notice to appear. One was under 212A9, which had to do with multiple reentries after deportation. The second was under 212A7 as an alien who applies for admission without travel documents. And I believe he contested that charge during his hearing before the immigration judge, claiming he was a citizen. But he admitted that he attempted to enter the United States without valid travel documents. That is an independent ground of removability that is independent of the 1998 removal order. After the 1998 removal order, he left the United States and repeatedly reentered illegally at least four times. Moreover, so he's independently removable regardless of whatever alleged errors there were in the 1998 removal order. In addition, he has already attempted to collaterally attack the 1998 removal order in a habeas petition in district court that I believe was filed after the Ninth Circuit remanded the case for a redetermination of the sentence because his DUI conviction was no longer an aggravated felony. The district court in that habeas petition, or the decision on the habeas petition is in the record at 386 to 390, I believe. The district court judge upheld the 1998 removal order. So he's a... Was that denial of habeas relief appealed? I'm not certain. I don't believe it was. But if it was appealed, I certainly don't believe it resulted in any other contrary order. So he's already had a chance, even if he could collaterally attack the 1998 removal order, we can see there's certainly been no showing of a gross miscarriage of justice. Even if he could, it's already been upheld once. And now he's independently removable on another removal ground. And to say that because he was removed in 1998 somehow infects every other single time that he's illegally reentered is to basically give him more due process because he illegally reentered than somebody who just accepted the removal order and left would be entitled to. What's the government's view as to what a gross miscarriage of justice standard requires? Well, I couldn't find any cases where this court found a gross miscarriage of justice. I can tell you what I don't think it encompasses, which are most of his claims. I mean, first of all, he waived his appeal from the 1998 removal order. And this court has already held in a case called Alvarenga-Villalobos that if you waive appeal from a removal order, you can't later claim that you were denied due process because you had an opportunity to appeal, you waived appeal, and that's it. There was some mention of the fact that he was charged as an inadmissible alien. That was actually correct. The charge under 237 may or may not have been correct. Section 212 provides that INA section 101A13C5 provides that an LPR is properly deemed to be seeking admission if he was convicted of a crime involving moral turpitude under section 212 of the INA. That is what Mr. Carrillo was charged with having committed. So he actually was properly charged under 212. Most of the other claims this court has specifically rejected, a collateral attack on a removal order, specifically with the DUI, this court has found is not an aggravated felony. However, that was years after the removal order. So this court has either specifically rejected his claims or he failed to exhaust his administrative remedies by raising any of the other claims below. And in our brief, we specify which claims he failed to raise below. Exhaustion is a jurisdictional requirement. He failed to do so. So his attempt to collaterally attack is 19- Let me ask a question on that issue. As to those claims he didn't exhaust below, can we reach them and address them on the merits, or are we required to dismiss them? Well, our position is that you're required to dismiss them. Most of them are without merit anyway. However, exhaustion is a jurisdictional requirement. With respect to his claim that his conviction for theft was not a crime involving moral turpitude, the only thing he ever argued below was that it was not an aggravated felony. It was never charged as an aggravated felony. It was charged as a crime involving moral turpitude. So all of his claims that he now makes before this court for the first time, that it wasn't proven by admissible documents and that he was eligible for this exception or that exception, none of those claims were raised below. And so this court has to dismiss them. How about the issue of whether he's a U.S. citizen because he applied for naturalization? It's clear, well, apparently he filed an application for naturalization in 1980. The record doesn't indicate what happened to that application. I would point out that in 1979, before he filed his naturalization application, he was convicted of vehicular homicide. That conviction's in the record. It's possible that that had something to do with the application, but there's no indication in the record of what happened to it. Now, however, he is in removal proceedings. And the immigration judge, he attempted to, again, apply for naturalization before the immigration judge. The immigration judge exercised his purely discretionary authority not to terminate removal proceedings. And it's clear that now that he's in removal proceedings, he's not eligible for citizenship. And so he filed this application back in 1980. That was a long, long time ago. He had numerous convictions after that. He was ordered removed after that. And, in fact, I don't believe he argued to, I don't know, in 1998 if he argued he was a citizen or not. But it's clear that he's not a citizen. And it's also clear that now he's not eligible to apply for citizenship because he's in removal proceedings. And the decision whether or not to terminate removal proceedings, as this court has also recognized, is a purely discretionary decision of the immigration judge that is not reviewable. So we oppose transfer of this case to the district court because there is no genuine issue of material fact as to whether or not he's a citizen. He's clearly not a citizen. And he's clearly not eligible for citizenship now because he's in removal proceedings. We have precedent, as I understood it, that says that service in the armed forces doesn't make someone a citizen. That's correct. Is that right? It makes you eligible under Section 329 of the INA to apply for citizenship. But you don't automatically get citizenship. No, you don't. But then as to his earlier application, as far as the record's concerned, we don't know whether it was denied or just got lost in the shuffle somehow and wasn't acted on or whether it was withdrawn. We have no idea what happened to it. That is correct. The record doesn't tell us what the action was in that, I think. But, you know, this argument segues into the attempt to collaterally attack the 1998 removal order. He is now in removal proceedings independent from the 1998 removal order, pursuant to this new notice to appear that was issued in 2002 based on his most recent illegal entry. The immigration judge refused to terminate removal proceedings, and so he is now not eligible to apply for citizenship. If the court has no further questions, I have nothing further. No further questions. Thank you. You like the nice weather here in California. I do. It's going to be about 25 degrees in Washington, D.C., this weekend. Before you fly back, maybe Ms. Krieger can show you around Pasadena here. I just wanted to make one point, which being the government suggested that the 212 charge against Mr. Carrillo in 1998 was proper because he had been charged with and found to have been guilty of a crime involving moral turpitude. In fact, this crime, which again was a petty theft for which he spent one day in jail, was encompassed by the petty offense exception. And this is not a discretionary kind of determination. This is a mandatory definitional section of what constitutes a conviction of moral turpitude, and this does not fall within those parameters. So 212 did not apply, and the 1998 order does constitute a miscarriage of justice. Okay. Thank you for your argument. I want to thank both counsel for their fine arguments. We appreciate it. Now, am I right that you're here on our pro bono? And so also, Ms. Krieger, you get a special thanks for handling one of our pro bono representations. We do appreciate it. And thank you for your travel to visit us.
judges: Thompson, T. Nelson, Gould.